IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| STATE OF SOUTH CAROLINA,<br>   Plaintiff,<br><br> v.<br><br>UNITED STATES,<br><br>UNITED STATES DEPARTMENT OF<br>  ENERGY;<br><br>RICK PERRY,<br>in his official capacity as Secretary of Energy;<br><br>NATIONAL NUCLEAR SECURITY<br>ADMINISTRATION; and<br><br>LISA E. GORDON-HAGERTY,<br>in her official capacity as Administrator of the<br>National Nuclear Security Administration<br>and Undersecretary for Nuclear Security.<br><br>   Defendants. | Case No. 1:18-cv-1431-JMC |

**MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

  Defendants hereby respectfully move to stay this Court's preliminary injunctive order of June 7, 2018, pending a decision from the Fourth Circuit on Defendants' appeal of the Court's preliminary injunction, pursuant to Rule 62(c). Defendants are filing an appeal concurrently with this motion,[1] and in light of the irreparable harm that Defendants will suffer in the absence of a stay, Defendants would respectfully request a decision by this Court on or before June 21,

---

[1] The filing of a notice of appeal does not divest this Court of jurisdiction to decide a motion for a stay filed pursuant to Rule 62(c), which specifically provides that the Court may stay an order "[w]hile an appeal is pending." *See* Wright & Miller, Federal Practice and Procedure § 2904 (3d ed. 2002).

2018, so that they may have sufficient time to seek a stay from the Court of Appeals if the Court denies this motion. Defense counsel has conferred with counsel from the State, and the State opposes this motion.

## BACKGROUND

On May 25, 2018, the State filed its complaint, bringing three causes of action: (1) that Defendants had not consulted with the Governor prior to sending the required commitment and certifications to the Congressional defense committees on May 10, 2018; (2) that Defendants failed to conduct the required analysis under the National Environmental Policy Act ("NEPA") prior to sending the commitment and certifications; and (3) that the content of the commitment and certifications themselves was an arbitrary and capricious action in violation of the Administrative Procedure Act ("APA"). ECF No. 1. Also on May 25, 2018, the State filed a motion for a preliminary injunction, ECF No. 5, and a motion for expedited briefing, ECF No. 6. The Court granted the motion for expedited hearing on May 29, 2018. ECF No. 8. Defendants filed a response in opposition to the State's motion for preliminary injunction on June 4, 2018. ECF No. 19. The Court held a hearing on the State's motion for preliminary injunction on June 5, 2018. ECF No. 20. The State filed a reply in support of its motion for preliminary injunction on June 6, 2018. ECF No. 21.

On June 7, 2018, this Court issued an opinion and injunctive order vacating a partial stop work order issued by Defendants on May 14, 2018, requiring Defendants to continue using appropriations to fund construction of the MOX Facility, and prohibiting Defendants from issuing a full stop work order or moving forward with its intention to pursue the dilute and dispose approach to disposing of plutonium designated for MOX processing. ECF No. 23. The Court held that the State has standing to bring this action because of the procedural and

environmental harms pled in the State's Complaint. *Id*. at 8-10.  The Court held that the State had not shown a likelihood of success on the merits of its claim that Defendants failed to consult with the Governor of South Carolina prior to providing the commitment and certifications to Congress under 50 U.S.C. § 2567.  *Id*. at 16-18.  However, the Court held that the State had shown a likelihood of success on the merits of its claims that (1) Defendants were required to conduct NEPA analysis on dilute and dispose prior to sending the commitment and certifications to Congress, *id*. at 19-24; and (2) Defendants acted arbitrarily and capriciously in providing a commitment and certifications to Congress pursuant to § 3121 of the 2018 NDAA, *id*. at 24-28.  The Court also held that the State had alleged that it would suffer irreparable harm, in the form of the termination of the MOX project and potential environmental harm associated with long-term plutonium storage.  *Id*. at 29-30.  The Court also held that the balance of equities favored the State, despite the $1.2 million daily cost of construction, because terminating MOX construction would harm the United States' foreign interests and risk South Carolina becoming a permanent repository for defense plutonium.  *Id*. at 31-34.  Finally, the Court held that an injunction was in the public interest because requiring governmental compliance with the law is in the public interest.  *Id*. at 34-35.

The Department of Energy ("DOE") and the National Nuclear Security Administration ("NNSA") have undertaken a number of significant actions to comply with this Court's June 7, 2018 preliminary injunction.  ECF No. 23.  On June 11, 2018, Defendants sent an email to the contractor, CB&I AREVA MOX Services, LLC, informing the contractor that pursuant to this Court's order, the May 14, 2018 partial stop work order that placed limitations on the costs associated with hiring new staff, initiating new or awarding in-process procurements, replacing non-manual and manual staff, renewal of expiring leases, and initiating new construction

activities has been cancelled, and the contractor has been instructed to continue performing construction tasks as it had prior to the May 14 partial stop work order. Ex. A. The agency has also instructed DOE personnel not to take any agency action to implement the dilute and dispose method for disposition of the 34 metric tons of defense plutonium originally designated for processing at the MOX facility,[2] unless and until additional NEPA analysis has been completed and the Court's injunction has been lifted.

## ARGUMENT

In light of the steps DOE has been required to take in order to comply with this Court's order, and the irreparable harm that accompanies those steps, Defendants respectfully submit that a stay pending appeal of that order is appropriate. In deciding a motion to stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also Rose v. Logan*, No. 13-cv-3592-RDB, 2014 WL 3616380, at *1-2 (D. Md. July 21, 2014) (collecting cases). District courts in this Circuit will balance these four factors, such that a stronger showing on one prong can make up for a weaker position on another. *See, e.g.*, *Ohio Valley Envt'l Coal., Inc. v. U.S. Army Corps of Engineers*, 890 F. Supp. 2d 688, 682 (S.D. W. Va. 2012); *In re Blackwater Enters, Inc.*, No. 12-25471-RAG, 2013 WL 6628397, at *5 n.11 (Bank. D. Md. Dec. 17, 2013). *But see Rose*, 2014 WL 3615380 at *2 (noting that some district

---

[2] Defendants do not construe the Court's preliminary injunction as restraining DOE's ongoing efforts to use dilute and dispose to remove defense plutonium that was *not* designated for processing at the MOX facility from South Carolina. Use of dilute and dispose for this plutonium has already been through the appropriate NEPA analysis, has been ongoing for a number of years, and was not challenged by the State in this action.

4

courts require an independent showing of all four factors and some do not). Ordinarily the movant must first seek such a stay in the district court before proceeding to the court of appeals. *See* Fed. R. App. Prod. 8(a)(1), (2).

To stay its own injunctive order, this Court need not reverse or contradict its prior holdings in the case, nor must it conclusively determine that Defendants will prevail on appeal. *See Ohio Valley Envt'l Coal.*, at 682 ; *see also Peck v. Upshur Cnty. Bd. of Educ.*, 941 F. Supp. 1478, 1481 (N.D. W. Va. 1996) ("To find that [movants] have a strong likelihood of success on the appeal, the Court need not harbor serious doubts concerning the correctness of its decision. Otherwise, relief under rule 62(c) would rarely be granted. 'What is fairly contemplated is that tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained.'") (quoting *Goldstein v. Miller*, 488 F. Supp. 156, 172-73 (D. Md. 1980)).

For the reasons stated in their brief in opposition to plaintiffs' motion for a preliminary injunction, Defendants respectfully assert that they have satisfied these factors and that a stay is warranted. As an initial matter, Defendants are likely to succeed on the merits of their appeal.[3] As Defendants argued in their brief, the State has not alleged a basis for standing to sue. This Court found three bases for standing: (1) the State's assertion that it had not been consulted on the decision at issue in this case, (2) Defendants had failed to prepare a NEPA analysis and the State owns property that borders the impacted area, and (3) the State has suffered an environmental injury. ECF No. 23 at 8-10. With respect to the consultation allegation, however,

---

[3] As this Court held in its June 7, 2018 injunctive order that the State was unlikely to succeed on the merits of its first cause of action, alleging that Defendants had failed to "consult" with the Governor as required by 50 U.S.C. § 2567(a), ECF No. 23 at 16-18, and the State did not include that cause of action in its Amended Complaint, ECF No. 25, that cause of action was not a basis for the Court's injunction and Defendants do not address it in this motion.

this Court held that Plaintiffs were unlikely to succeed on such a claim, *id*. at 16-18, and Plaintiffs have subsequently dismissed that claim from this lawsuit, ECF No. 25.  That leaves the State's allegations of environmental injury based on the State's concern that it will become the "*de facto* dumping ground" for all 34 metric tons of defense plutonium designated for MOX.  ECF No. 5 at 26.  However, as this Court recognized, such harm would occur at the earliest by 2046, because it is undisputed that a NEPA analysis has been performed for storage of materials prior to that date.  ECF No. 23 at 21-22.  Such harm, to potentially occur in 30 years at the earliest, cannot be considered an imminent injury under Article III, particularly when the State's preferred alternative – the construction of the MOX facility – is not estimated to be complete until 2048.  Raines Decl., Ex. 1 to Opp'n to Mot. for Preliminary Inj., ECF No. 19-1 ¶ 8.

Moreover, the State's claims fail on their merits.  With respect to the State's NEPA claim, the State has produced no evidence clearly demonstrating that either (a) DOE has any plans to store defense plutonium designated for MOX for longer than the 50-year period that the State concedes has been studied under a previous environmental impact statement, or (b) that DOE has made an irreversible or irretrievable commitment of resources to use the dilute and dispose methodology to remove the defense plutonium designated for MOX from South Carolina.  *See* ECF No. 19 at 14-19.

Furthermore, the State is unlikely to succeed on its APA claim.  Defendants have not argued that final agency action is lacking but rather that notifications mandated by Congress in appropriations statutes are not justiciable.  ECF No. 19 at 20-22.  As courts have found in the context of statutes similar to the present, which permit action only after a federal agency has complied with congressional reporting mandates, the agency's compliance is to be judged by Congress rather than the Judiciary.  *See, e.g.*, *Greenpeace USA v. Stone*, 748 F. Supp. 749 (D.

6

Haw. 1990). Even if such mandates were justiciable, the State has failed to demonstrate that Defendants did not comply with the specific, limited requirements Congress set forth for the commitment and certifications under § 3121 of the current defense appropriations act.[4] Pub. L. No. 115-91, § 3121(b)(1); *see* ECF No. 19 at 19-28.

With respect to the second stay factor – irreparable injury – this Court has recognized that "the continuation of MOX construction involves taxpayer expenditures of approximately $1.2 million per day," ECF No. 23 at 31, which cannot be recovered if the court of appeals reverses the preliminary injunction. As this Court noted in its order, "the financial impact resulting from a preliminary injunction weighs in favor of the Federal Defendants" and justifies a stay to prevent such harm. *Id.*

Moreover, the court's injunction, which orders DOE to "terminate and cease…its intent to pursue the Dilute and Dispose approach to plutonium disposition" could also be construed to prevent DOE from taking steps to address what this Court has identified as the State's underlying concern, i.e. the expeditious removal of defense plutonium from the State. The injunction could arguably be read to prohibit DOE from internally discussing, or taking any steps to perform the appropriate NEPA analysis for, using dilute and dispose for removing the defense plutonium designated for MOX processing from South Carolina. Thus, the Court's injunction not only

---

[4] The Secretary's commitment to remove plutonium from South Carolina and certification that a cheaper alternative exists is not inconsistent with Defendants' argument that no NEPA analysis is yet required for dilute and dispose because there has been no final decision to use dilute and dispose to remove defense plutonium designated for MOX processing from South Carolina or any irreversible commitment of resources towards using dilute and dispose for that purpose. Section 3121 of the 2018 NDAA only required that the Secretary make a commitment to remove this defense plutonium from South Carolina and to certify that a cheaper alternative to MOX processing exists that meets certain limited, specific criteria set forth by Congress. Congress did not require that a final decision to use that alternative process be made, or that the appropriate NEPA analysis be conducted, in order for Defendants to exercise the waiver and stop using appropriations on construction of the MOX Facility.

prevents Defendants from stopping the expenditure of appropriations on the MOX facility, but could be interpreted as preventing Defendants from taking any steps toward planning or environmental review of the dilute and dispose method as one of several potential alternative disposition pathways.  Read in this manner, the injunction would constitute a severe limitation on the agency's planning processes and ability to make an informed decision about the removal of plutonium from South Carolina.

Finally, the balance of the equities and the public interest weigh in favor of a stay.  Even absent a stay, "no physical changes will be made to the MOX facility except for steps needed to preserve the structure in its current condition for at least the next six months and most likely more than a year."  Raines Decl., ECF No. 19-1, ¶ 20.  Accordingly, a stay pending an expedited appeal would not eliminate the agency's ability to renew MOX construction if the injunction is affirmed by the Fourth Circuit.  And the State would suffer no harm during this period from the storage of defense plutonium at Savannah River (environmental or otherwise), because it is undisputed that the material must continue to be stored at the site during that time regardless of its ultimate path for disposition.

Weighed against this absence of harm is the continued expenditure of taxpayer money in contravention of both the judgment of the Department of Energy and the intent of Congress, as well as the ability of Defendants to make alternative uses of the MOX construction site in support of the national security.  During the pendency of the injunction, Defendants cannot prepare to repurpose the MOX facility construction site for the facility to produce plutonium pits – a need that both the Department of Energy and the Department of Defense have identified as urgent and crucial to national security, and for which the MOX site has been identified as the best candidate.  ECF No. 19-10.  Any delay in moving forward with this program could

jeopardize DOE's ability to meet the requirement that NNSA be able to produce no fewer than 80 war reserve pits per year by the year 2030. Calbos Decl., Ex. 3 to Opp'n to Mot. for Preliminary Inj., ECF No. 19-10 ¶ 8.

## CONCLUSION

For these reasons, Defendants respectfully ask this Court to stay its June 7, 2018 injunction until the Court of Appeals for a Fourth Circuit issues a decision on Defendants' appeal of that injunction.

Respectfully submitted,

CHAD A. READLER
Assistant Attorney General
Civil Division

ERIC WOMACK
Assistant Director
Federal Programs Branch

SHERRI A. LYDON
United States Attorney

BARBARA M. BOWENS (#4004)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, South Carolina 29201
Telephone: (803) 929-3000

RAPHAEL O. GOMEZ (D.C. Bar #305540)
Senior Trial Counsel
U.S. Department of Justice, Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-1318
Facsimile: (202) 616-8460
raphael.gomez@usdoj.gov

By: s/ Martin M. Tomlinson
MARTIN M. TOMLINSON (#76014)
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 353-4556
martin.m.tomlinson@usdoj.gov

June 15, 2018                                   *Attorneys for the Defendants*